UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL PHILLIPS,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of the Social Security<br>Administration,[1]<br><br>                    Defendant. | CASE NO. 12-cv-5200-BHS-JRC<br><br>REPORT AND<br>RECOMMENDATION ON<br>PLAINTIFF'S COMPLAINT<br><br>Noting Date: April 12, 2013 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed and also includes a Motion to Strike (*see* ECF Nos. 21, 24, 25).

_____

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

After considering and reviewing the record, the Court finds that ALJ Robeck erred when he failed to discuss significant probative evidence from "other medical" sources regarding plaintiff's mental impairments. In addition, ALJ Robeck failed to provide specific and legitimate reasons for failing to credit fully opinions from plaintiff's treating primary care doctor.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative consideration. The Motion to Strike is denied (*see* ECF No. 24).

<u>BACKGROUND</u>

Plaintiff, MICHAEL PHILLIPS, was born in 1959 and was forty-five years old on the alleged date of disability onset of November 20, 2004 (*see* Tr. 98). Plaintiff has a high school general equivalency diploma ("GED") (*see* Tr. 709, 1259). Although plaintiff testified to working in the automotive field, he does not have any past relevant work (*see* Tr. 709, 1260).

Plaintiff testified that he did not have any earnings on his earnings record for twenty years because he hurt is back in a bus accident in 1993 (*see* Tr. 1260). He also described his prior motorcycle accident as follows:

> I had that in 1986. I broke a bone in my neck and destroyed my rotator. I was in a coma-like state for three days. And I was basically out of commission for seven months, was in an airplane splint. They took three and a half grams of bone out of my shoulder and rebuilt it.

(Tr. 1260).

Plaintiff testified that he had problems breathing; problems standing or walking for any amount of time; and problems with his back (*see* Tr. 1261). He also testified that he could lift about ten pounds (Tr. 1265). Regarding mental impairments, plaintiff testified that he was depressed, and had anxiety and panic attacks (Tr. 1266). Plaintiff had at least the severe impairments of degenerative disc disease, chronic obstructive pulmonary disease (COPD), a personality disorder, and marijuana abuse (*see* Tr. 706).

## PROCEDURAL HISTORY

After filing numerous applications for supplemental security income ("SSI"), plaintiff, on April 18, 2005, protectively filed an apparent sixth application for SSI pursuant to Title XVI of the Social Security Act (*see* Tr. 21, 98-100). Plaintiff did not appeal the November 19, 2004 administrative decision on his fifth application for SSI, and this decision was the basis for a presumption of non-disability applied to his sixth SSI application (*see* Tr. 22).

Plaintiff's sixth SSI application was denied initially in December, 2005 and following reconsideration in March, 2006 (*see* Tr. 21). Plaintiff's requested February 25, 2008 hearing was held before Administrative Law Judge Dan R. Hyatt ("ALJ Hyatt"), who issued an unfavorable written decision that was vacated by the Appeals Council in 2008 (*see* Tr. 21, 665-91).

Plaintiff testified at a subsequent administrative hearing on July 16, 2009 (*see* Tr. 692-99). On September 22, 2009, ALJ Hyatt issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 18-37). On February 23, 2010, the Appeals Council denied plaintiff's request for review, making the

1  written decision by ALJ Hyatt the agency decision subject to judicial review (Tr. 7-9).

2  *See* 20 C.F.R. § 404.981.

3      On April 24, 2010, plaintiff sought judicial review of the September 22, 2009

4  written decision by ALJ Hyatt (*see* Tr. 716, 714-35). On May 4, 2011, this Court issued a

5  Report & Recommendation ("R&R"), recommending that the September 22, 2009

6  decision be reversed and the matter be remanded for further administrative proceedings

7  (*see* Tr. 715-35). Magistrate Judge Karen L. Strombom found that ALJ Hyatt should have

8  obtained the testimony of a vocational expert regarding the impact of plaintiff's

9  environmental restrictions on his ability to work (*see* Tr. 734). This R&R was adopted by

10  the Court, and this matter was remanded thereby on June 7, 2011 (*see* Tr. 714).

11

12      On July 21, 2011, the Appeal Council Ordered the September 22, 2009 decision

13  vacated, and remanded the matter to an ALJ for further administrative proceedings (*see*

14  Tr. 738-39). In doing so, the Appeals Council noted that plaintiff in the interim had filed

15  multiple additional applications for benefits, on March 11, 2009 and on January 1, 2011,

16  and the Appeals Council Ordered the ALJ to associate the claim files and issue a new

17  decision on the consolidated claims (*see id.*).

18      Plaintiff testified at an additional supplemental administrative hearing before ALJ

19  Paul G. Robeck ("ALJ Robeck") on October 27, 2011 (*see* Tr. 1250-75). On November

20  18, 2011, ALJ Robeck issued a written decision in which he found that plaintiff was not

21  disabled pursuant to the Social Security Act from April 18, 2005 to the date of the

22  decision (*see* Tr. 700-10). ALJ Robeck incorporated the written decision from ALJ Hyatt

23  into his written decision (*see* Tr. 706). Plaintiff did not file exceptions to the Appeals

24

1  Council, which did not otherwise assert jurisdiction, making the November 18, 2011

2  written decision the final agency decision now subject to judicial review. *See* 20 C.F.R. §

3  404.984(d).

4      Plaintiff filed a complaint in this Court seeking judicial review of ALJ Robeck's

5  November 18, 2011 written decision in March, 2012 (*see* ECF Nos. 1, 3). Defendant filed

6  the sealed administrative record regarding this matter ("Tr.") on June 12, 2012 (*see* ECF

7  Nos. 12, 14). In plaintiff's Opening Brief, plaintiff raises the following issues: (1)

8  whether or not the ALJ erred by failing to consider the combined effects of plaintiff's

9  mental and physical impairments at step three of the sequential disability evaluation

10 process; (2) whether or not the ALJ erred by failing to consider evidence from treating

11 sources at Columbia River Mental Health Services; (3) whether or not the ALJ erred by

12 rejecting the opinions of treating physician Dr. Layne Prest, M.D.; (4) whether or not the

13 ALJ erred by failing to include opined functional limitations from plaintiff's primary care

14 provider Dr. John Nusser, M.D. into his determination regarding plaintiff's residual

15 functional capacity ("RFC"); (5) whether or not the ALJ erred by failing to include

16 opined functional limitations from plaintiff's examining doctor, Dr. Schneider and (6)

17 whether or not the ALJ evaluated properly plaintiff's credibility (*see* ECF No. 21, p. 7).

18                            STANDARD OF REVIEW

19     Plaintiff bears the burden of proving disability within the meaning of the Social

20 Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

21 the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

22 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

1   (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

2   disability as the "inability to engage in any substantial gainful activity" due to a physical

3   or mental impairment "which can be expected to result in death or which has lasted, or

4   can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

5   §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

6   impairments are of such severity that plaintiff is unable to do previous work, and cannot,

7   considering the plaintiff's age, education, and work experience, engage in any other

8   substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

9   1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

10          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

11  denial of social security benefits if the ALJ's findings are based on legal error or not

12  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

13  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

14  1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

15  such "'relevant evidence as a reasonable mind might accept as adequate to support a

16  conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

17  Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

18  389, 401 (1971). Regarding the question of whether or not substantial evidence supports

19  the findings by the ALJ, the Court should "'review the administrative record as a whole,

20  weighing both the evidence that supports and that which detracts from the ALJ's

21  conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting

22  Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine

23

24

whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

1

2
<u>DISCUSSION</u>

3
1.  **Whether defendant's Motion to Strike plaintiff's overlength brief should be**

4
    **granted or denied**.

5
As a preliminary matter, the Court notes that defendant has moved to strike

6
plaintiff's overlength brief or in the alternative strike specific pages of said brief, citing

7
Local Rules W.D. Wash Civil Rule 7(e)(3) ("LCR 7(e)(3)") (*see* Response, ECF No. 24,

8
pp. 2-3). In response, plaintiff contends that he specifically reviewed the local rules

9
regarding an applicable page limit, and did not assess that any such limit applied (*see*

10
Reply, ECF No 25, p. 2). Plaintiff also asserts that any failure thus was inadvertent and

11
requests that excess pages be allowed (*id.*). Plaintiff contends that he addressed the issues

12
as concisely as possible, and notes that the transcript in this matter exceeds 1200 pages

13
and that the two administrative decisions, one of which was adopted in its entirety into

14
the other, and this Court's initial R&R, total forty-two pages in length (*id.*). Plaintiff adds

15
that the administrative decision subject to this court's review allegedly contained six

16
errors, requiring all of the Opening Brief's thirty-four pages (*see id.*).

17
The Court's Order Setting Briefing Schedule in this case specifies that the "length

18
of the briefing shall conform to Local Rule CR 7(e)(3)" ["LCR 7(e)(3)"] (*see* ECF No.

19
13). According to the Local Rules here in the Western District of Washington,

20
specifically LCR 7(e)(3), certain specified motions "shall not exceed twenty-four pages,"

21
and Reply briefs shall not exceed twelve pages." LCR 7(e)(3).

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 8

1    Therefore, according to LCR 7(e)(3), the Opening Brief and the Response Brief

2  "shall not exceed twenty-four pages." Hence, plaintiff's Opening Brief, at thirty-four

3  pages, is longer than allowed. *See id.* The Court notes that plaintiff did not receive

4  permission from this Court to file an overlength brief, which is required by LCR 7(f).

5    Based on the administrative record, which in this particular matter is much longer

6  than average, and the two administrative decisions and this Court's previous R&R

7  therein, and based on plaintiff's asserted inadvertence in failing to comply with the

8  Court's local rules, the Court denies defendant's Motion to Strike. *See* LCR 7(e)(3); *but*

9  *see Goodwin v. Astrue*, 2011 U.S. Dist. LEXIS 152150 at *6-*8 (W.D. Wash. December

10  21, 2011) (unpublished opinion).

11

12    2.  **Whether or not the law of the case applies to the matter herein**.

13    As summarized by the Ninth Circuit, the law of the case doctrine posits "that

14  'when a court decides upon a rule of law, that decision should continue to govern the

15  same issues in subsequent stages in the same case  . . . .'" *United States v. Park Place*

16  *Associates*, 563 F.3d 907, 925 (9th Cir. 2009) (*quoting Arizona v. California*, 460 U.S.

17  605, 618 (1983)) (other citations omitted). This discretionary doctrine is founded on the

18  policy that litigation should come to an end. *Earl Old Person v. Brown*, 312 F.3d 1036,

19  1039 (9th Cir. 2002) (*quoting Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en

20  banc)).  The Ninth Circuit has noted the following exceptions to the law of the case

21  doctrine: "'(1) the decision is clearly erroneous and its enforcement would work a

22  manifest injustice, (2) intervening controlling authority makes reconsideration

23  appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'"

24

*Id.* (*quoting Jeffries, supra*, 114 F.3d at 1489). In addition, the Court finds persuasive authority from the Eighth Circuit concluding that when an issue is unaddressed in an original district court decision reversing and remanding a social security matter, that issue is not subject to the law of the case doctrine if the matter again comes before the district court on subsequent review. *See Brachtel v. Apfel*, 132 F.3d 417, 419-20 (8th Cir. 1997) ("The 'law of the case' doctrine is inapplicable here because the District Court did not actually decide [the particular issue subject to judicial review]").

Here, plaintiff argues that most of his challenges herein involve issues that were not addressed in the previous R&R and Order from this Court (*see* Reply Brief, ECF No. 26, pp. 2-3). The Court agrees that most of plaintiff's contentions were not addressed and were not decided by this Court previously, and hence, the law of the case doctrine does not apply to these issues. *See Brachtel, supra*, 132 F.3d at 419-20.

Perhaps more importantly, plaintiff also argues that new evidence was submitted and adduced at his administration hearing following remand of this matter, additionally rendering inapplicable the law of the case doctrine herein (*see* Reply Brief, ECF No. 26, pp. 3-4). *See Earl Old Person, supra*, 312 F.3d at 1039 (*quoting Jeffries, supra*, 114 F.3d at 1489). As indicated previously, an exception to the law of the case doctrine exists when substantially different evidence has been adduced at a subsequent trial or evidentiary hearing. *See Earl Old Person, supra*, 312 F.3d at 1039 (*quoting Jeffries, supra*, 114 F.3d at 1489). Plaintiff testified at his administrative hearing, and also added new exhibits to the administrative record, including a new letter from plaintiff's primary care provider, Dr. Nusser (*see* Tr. 1086). In addition, new medical records were

submitted, including new findings from Dr. Prest, who treated plaintiff for mental

impairments, and treatment records from Columbia River Mental Health Services that

were unaddressed in the written decision subject to judicial review herein (*see, e.g.*, Tr.

1163, 1168, 1179). Finally, plaintiff filed additional applications for Social Security

benefits after the decision by ALJ Hyatt.

Based on a review of the relevant record, including the new evidence made part of

the record subsequent to this Court's remand of this matter, the Court concludes that

substantially different evidence was adduced or otherwise made part of the record at

plaintiff's subsequent hearing, and hence, the law of the case doctrine does not apply

herein. *See Earl Old Person*, *supra*, 312 F.3d at 1039 (*quoting Jeffries*, *supra*, 114 F.3d at

1489).

3. **Whether or not the ALJ erred by failing to consider evidence from other**

**medical sources at Columbia River Mental Health Services**.

Plaintiff argues that ALJ Robeck erred by ignoring evidence from other medical

sources at Columbia River Mental Health Services. Defendant argues that the error was

harmless as this evidence was not significant, probative evidence that ALJ Robeck was

required to discuss. This evidence was not available to ALJ Hyatt, as it includes records

covering a period of time after his 2009 written decision.

In addition to "acceptable medical sources," that is, sources "who can provide

evidence to establish an impairment," *see* 20 C.F.R. § 404.1513 (a), there are "other

sources," such as friends and family members, who are defined as "other non-medical

sources," *see* 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse

practitioners, therapists and chiropractors, who are considered other medical sources[2], *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

However, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources. *See* SSR 06-03p, 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted). Nevertheless, evidence from "other medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources

___

[2] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," *see* 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," *see* 20 C.F.R. § 404.1513(d)(3).

who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to other medical sources include:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source present relevant evidence to support an opinion; How well the source explains the opinion; Whether [or not] the source has a specialty or area of expertise related to the individuals' impairments(s), and Any other factors that ten to support or refute the opinion.

2006 SSR LEXIS 5 at *11. In addition, the fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals." *Id.* at *12. However, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medial source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *12-*13.

Here, ALJ Robeck failed to discuss the evidence from other medical sources at Columbia River Mental Health Services. ALJ Robeck, therefore, committed legal error. *See Stout*, *supra*, 454 F.3d at 1053.

According to the Ninth Circuit, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056 (reviewing cases). However, if the ALJ has provided proper reasons to discount the lay testimony in another aspect of the written decision, such as within the discussion of plaintiff's credibility, the lay testimony may be considered discounted properly even if the ALJ fails to link explicitly the proper reasons to discount the lay testimony to the lay testimony itself. *See Molina, supra*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46 (*quoting Lewis, supra*, 236 F.3d at 512). The Court will not reverse a decision by an ALJ in which the errors are harmless and do not affect the ultimate decision regarding disability. *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

Evidence from Columbia River Mental Health Services that erroneously was not discussed by ALJ Robeck includes records from April 15, 2010 to January 21, 2011 (*see* Tr. 1046-77). For example, Ms. Minna Wurzer, M.S., evaluated plaintiff and conducted a mental status examination ("MSE") (*see* Tr. 1048). Ms. Wurzer noted plaintiff's pressured speech and depressed mood, and assessed that plaintiff suffered from recurrent

and moderate Major Depressive Disorder, as well as Post Traumatic Stress Disorder ("PTSD") with panic attacks (*see* Tr. 1048-49). She assigned plaintiff's global assessment of functioning ("GAF") at 42 (*see* Tr. 1049). Ms. Wurzer explained the basis for her assignment of a GAF of 42, as "due to serious impairment in mood (depressed mood with feelings of worthlessness) passive suicidal ideation, impairment due to anxiety (panic attacks), and serious impairment in relationships (few to no friends)" (*see id.*).

Similarly, Nurse J. River Gaynor, ARNP, evaluated plaintiff and performed a MSE on June 7, 2010 (*see* Tr. 1068-69). Nurse Gaynor observed plaintiff's mood of intermittent sadness and irritability; and noted that plaintiff's affect was slightly restricted (*see* Tr. 1069). Nurse Gaynor assessed that plaintiff was suffering from PTSD, chronic, and a rule out assessment of bipolar disorder (*see* Tr. 1069). Nurse Gaynor assigned plaintiff's GAF at 45 to 50 without medications and starting support (*id.*).

After seeing plaintiff repeatedly over the course of months, Nurse Gaynor again evaluated plaintiff and performed a MSE on October 29, 2010 (*see* Tr. 1053-54; *see also* Tr. 1060-69). Nurse Gaynor observed plaintiff's calm and sad affect, his restricted affect, and that his memory was impaired slightly (*see* Tr. 1053). Nurse Gaynor assessed that plaintiff suffered from PTSD and marijuana dependence, among other issues, and also assessed that plaintiff's GAF was 45-50 "with medications and support" (*see* Tr. 1053).

Mary Joyce, M.A. evaluated plaintiff on October 7, 2010 (*see* Tr. 1058-59). She noted that plaintiff frequently was "tearful during normal goal focused discussion" (*see* Tr. 1058). Ms. Joyce assessed that plaintiff was suffering from recurrent and moderate

Major Depressive Disorder and PTSD with panic attacks, among other issues (*see id.*).

She similarly assigned plaintiff's GAF at 50 (*see id.*).

Defendant argues that this lay evidence from the other medical sources was not significant and probative and "did not have to be discussed by the ALJ" (*see* Response, ECF No. 24, p. 18). It is true that an ALJ need only discuss significant, probative evidence. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)). However, here, ALJ Robeck found that plaintiff's depression and anxiety both were not severe impairments (*see* Tr. 706), and hence, by implication, found that these alleged impairments did not have more than a minimal effect on plaintiff's ability to work. *See Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)) ("An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work'"). ALJ Robeck's finding on this issue clearly is at odds with the assessments of Ms. Wurzer, Nurse Gaynor and Ms. Joyce regarding plaintiff's functional impairments, as indicated most directly by their GAF assignments (*see, e.g.,* Tr. 1049, 1058, 1069). ALJ Robeck's failure to discuss this evidence is relevant also to the determination regarding plaintiff's RFC and the ultimate disability determination in this matter. The Court also notes that ALJ Robeck failed to credit fully plaintiff's allegations in part due to an alleged lack of support from the medical records (*see* Tr. 709). Therefore, ALJ

Robeck's failure to evaluate this lay evidence, which supports plaintiff's allegations, bears on the credibility assessment, as well, *see also infra,* section 5.

Based on a review of the relevant record, the Court concludes that ALJ Robeck's failure to discuss the evidence from the other medical sources was not harmless error. *See Stout*, *supra*, 454 F.3d at 1056; *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009). Therefore, this matter should be reversed and remanded to the Commissioner for further consideration of the lay evidence.

4. **Whether or not the ALJ erred in his assessment of the opinions of plaintiff's primary care provider Dr. John Nusser, M.D**.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also* 20 C.F.R. § 416.902.  The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, according to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356.

1    Plaintiff argues that it was harmful error for the ALJ to come to a RFC

2 determination that conflicted with Dr. Nusser's opinion without an explicit discussion of

3 Dr. Nusser's opinion (*see* Opening Brief, ECF No. 21, pp. 16-22). Plaintiff complains

4 that "ALJ Robeck rejected without any discussion Dr. Nusser's limitations on lifting and

5 carrying weight and sitting more than 10 to 15 minutes at a time; all of his manipulative

6 and postural limitations; all of his environmental limitations except as to dust and fumes

7 etc.; and his opinion that [plaintiff] would miss more than two days of work per month"

8 (*see* Reply, ECF No. 25, p. 4 (*citing* Tr. 393-94, 706-10, 1086-87)).

9    Although defendant argues that ALJ Robeck's incorporation of ALJ Hyatt's

10 written decision is a proper way for ALJ Robeck to have rejected the opinions from

11 treating physician, Dr. Nusser, even if the Court were to assume the correctness of this

12 assertion, the discussion by ALJ Hyatt in September, 2009 did not include specific and

13 legitimate reasons to fail to credit Dr. Nusser's opinion from October, 2011. This finding

14 by the Court is demonstrated by the fact that ALJ Hyatt failed to credit fully Dr. Nusser's

15 opinion in part by finding that Dr. Nusser had not provided explicit objective findings to

16 support his opinions (*see* Tr. 34). However, in Dr. Nusser's October 26, 2011 letter, Dr.

17 Nusser explicitly indicates reasoning that was not before ALJ Hyatt, as well as objective

18 findings supporting his opinions regarding functional limitations: "The limitations are

19 based on objective evidence from [plaintiff]'s treatment history and our treatment

20 sessions," such as "consistently displayed reduced ROM and tenderness on exam and an

21 MRI from 2006 showed a disc bulge and stenosis" (*see* Tr. 1086). Dr. Nusser provided

22 other objective evidence in support of his opinions, as well (*see id.*). He also indicated his

1   assessment that plaintiff suffered from "mental health symptoms that tend to heighten his

2   experience of physical pain" (*id.*).

3          Dr. Nusser indicated his assessment regarding plaintiff's mental health symptoms

4   as follows:

> [Plaintiff]'s mental health symptoms are also paramount. I have known
> [plaintiff] for five years. I am very familiar with his history and feel I
> have a thorough understanding of his condition. While I am not mental
> health counselor (sic), I am familiar with his mental health conditions
> due to the longevity of our treatment and his presentation during our
> treatment sessions. [Plaintiff] suffers from depression, anxiety and a
> personality disorder. I have worked closely with our behavioral scientist
> around his care as well. I have treated his depression and anxiety for
> many years. I prescribe medication and manage many of his mental
> health symptoms by adjusting his medication. I know [plaintiff] uses
> marijuana, but I do not feel it contributes significantly to his mental
> health symptoms. In fact, in December 2008 chart notes from out facility
> indicate [plaintiff] stopped using marijuana for a period and his anxiety
> increased to the point that we had to increase his medication. In the
> absence of marijuana use, I think I would still find [plaintiff]'s
> depression and anxiety would make employment very difficult for him.
>
> I feel the combination of mental health and physical conditions would
> make employment very difficult for [plaintiff].It is not likely that he
> could be expected to attend to daily pressures of showing up timely and
> routinely. In my previous opinion I thought [plaintiff] would likely have
> missed more than two days of work a month due to an exacerbation of
> his symptoms and I still believe this to be true.

(Tr. 1087).

          The Court first notes that Dr. Nusser's October, 2011 letter includes information

and evidence that was not before ALJ Hyatt (*see* Tr. 1086-87). Therefore, the law of the

case doctrine does not apply. *See Earl Old Person*, *supra*, 312 F.3d at 1039 (*quoting*

*Jeffries, supra*, 114 F.3d at 1489) ("'substantially different evidence was adduced at a

subsequent trial'"). Furthermore, ALJ Robeck could not rely on the written decision of

ALJ Hyatt to provide specific and legitimate reasons to reject an intervening treating

medical opinion based on new assessments and an explicit explanation with respect to the

supporting objective medical evidence in support of his opinion. Dr. Nusser is plaintiff's

treating physician, and as such, his "medical opinion as to the nature and severity of an

individual's impairment must be given controlling weight if that opinion is well-

supported and not inconsistent with the other substantial evidence in the case record." *See*

*Edlund*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (*citing*

SSR 96-2p, 1996 SSR LEXIS 9). Even if Dr. Nusser's opinions are contradicted by other

medical opinions, his opinions still only can "be rejected for specific and legitimate

reasons that are supported by substantial evidence in the record." *See Lester, supra*, 81

F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043). ALJ Robeck provides no

reasons for his rejection of these opinions of Dr. Nusser, committing legal error.

ALJ Robeck came to a determination regarding plaintiff's RFC that conflicts with

the opinion of Dr. Nusser (*see* Tr. 708). The hypothetical presented to the vocational

expert was based on this RFC, therefore ALJ Robeck's ultimate determination that

plaintiff was not disabled, premised in part on the vocational expert's testimony

regarding other work that plaintiff could perform in the national economy, is not

supported by substantial evidence in the record as a whole (*see* Tr. 709-10). For this

reason, and based on the relevant record, the Court concludes that this error by the ALJ is

not harmless. *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-

*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki, supra*, 556 U.S. at 407;

1  *Stout, supra*, 454 F.3d at 1054-55. Thus, this additional finding herein requires that this

2  matter be reversed and remanded for further administrative proceedings.

3      The Court notes that the October, 2011 letter from Dr. Nusser was an opinion

4  regarding the current functional ability of plaintiff at the time of the letter, as Dr. Nusser

5  clearly indicates in his letter that he currently believed that plaintiff's breathing problems

6  had "worsened" since his previous assessment (*see* Tr. 1086). He was not providing an

7  opinion regarding plaintiff's condition in the past (*see id.*). Although this evidence was

8  new evidence to ALJ Robeck, as it was not available to ALJ Hyatt, it is not new evidence

9  presented for the first time to the Appeals Council, therefore defendant's characterization

10 of it as a "retrospective opinion" is not persuasive (*see* Response, ECF No. 24, p. 13 n.5

11 (*citing Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989))).

12

13     Finally, the Court will not avail itself of defendant's suggestion to engage in an

14 attempt to intuit what ALJ Robeck may have been thinking when he disregarded without

15 comment the October, 2011 opinion of treating physician, Dr. Nusser. *See Bray*, *supra*,

16 554 F.3d at 1226-27 ("[l]ong-standing principles of administrative law require us to

17 review the ALJ's decision based on the reasoning and actual findings offered by the ALJ

18 - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been

19 thinking") (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted)).

20     5.  **Whether or not the ALJ evaluated properly plaintiff's credibility**.

21     This Court already has determined that multiple errors in this matter require a *de*

22 *novo* review of plaintiff's claims and a re-evaluation of the record as a whole, *see supra*,

23 sections 3 and 4. In addition, a determination of a claimant's credibility relies in part on

24

the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Furthermore, ALJ

Robeck explicitly failed to credit fully plaintiff's allegations in part due to an alleged lack

of support from the medical records, when all of the relevant supporting records were not

discussed (*see* Tr. 709; *see also supra*, section 3). For these reasons, the Court concludes

that plaintiff's credibility must be assessed anew following remand of this matter.

Similarly, although plaintiff has raised other issues for this Court's review, the

Court already has identified multiple errors requiring a re-evaluation of all of the

evidence as a whole, *see supra*, sections 3 and 4. Therefore, the remaining issues plaintiff

seeks to have addressed again shall be evaluated anew following remand of this matter.

For example, limitations opined by Dr. Robert Schneider, Ph.D., not addressed by either

ALJ Robeck or ALJ Hyatt, should be addressed explicitly following remand of this

matter.

6. **Whether this matter should be reversed and remanded for an award of benefits or remanded for further administrative proceedings**.

Generally, when the Social Security Administration does not determine a

claimant's application properly, "'the proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation.'" *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

Circuit has put forth a "test for determining when [improperly rejected] evidence

should be credited and an immediate award of benefits directed." *Harman v. Apfel*,

211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).   If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and RFC. *See Sample, supra*, 694 F.2d at 642.

1

CONCLUSION

2

Based on the stated reasons, and the relevant record, the undersigned recommends

3

that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42

4

U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be

5

for **PLAINTIFF** and the case should be closed.

6

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

7

fourteen (14) days from service of this Report to file written objections. *See also* Fed. R.

8

Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

9

purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

10

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

11

matter for consideration on April 12, 2013, as noted in the caption.

12

13

Dated this 20th day of March, 2013.

14

15

16

17

J. Richard Creatura
United States Magistrate Judge

18

19

20

21

22

23

24